UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIRGINIA WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>MARJEM RECOVERY, LLC,<br><br>Defendant. | CIVIL ACTION<br>NO. 13-12058-TSH<br>(Consolidated) (Lead Case) |
| VIRGINIA WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>MARJEM MORTGAGE CORPORATION, OCWEN LOAN SERVICING, LLC, MARYANN KOZLOWSKI, and WILLIAM KOZLOWSKI a/ka/ ZBIGNIEW KOZLOWSKI<br><br>Defendants. | CIVIL ACTION<br>NO. 13-40108-TSH |

**MEMORANDUM OF DECISION**
**August 27, 2014**

HILLMAN, D.J.

### Introduction

In October 2013, this Court held a jury trial in this matter where the Plaintiff presented evidence on her jury and jury waived claims against Defendant Marjem Mortgage Corporation ("Marjem Mortgage") and Defendant Marjem Recovery, LLC ("Marjem Recovery") (collectively, the "Marjem Defendants") and against Defendant Maryann Kozlowski ("Mrs.

1

Kozlowski") and Defendant William Kozlowski ("Mr. Kozlowski") (collectively the "Kozlowskis").[1] On November 12, 2013, this Court held a bench trial on Plaintiff Virginia Wright's ("Mrs. Wright") jury waived claims of Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Mortgagee's Duty of Good Faith, Unconscionability, Rescission, Violation of M.G.L. c. 93A, and Declaratory Judgment against the Marjem Defendants, and the jury waived claim of Indemnification against the Kozlowskis. The Court now publishes its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## Findings of Facts

On March 24, 1960, Mrs. Wright and her late husband acquired the property located at 75 Howe Avenue, Shrewsbury, Massachusetts (the "Property") subject to a mortgage. This mortgage was paid off well before the maturity date. On February 16, 2005, Mrs. Wright executed a new mortgage on the Property in the amount of $125,000.00 to Lex Lubar, Trustee of Clover Trust. On December 12, 2006, Mrs. Wright provided a mortgage against the Property in the amount of $102,000.00 (the "First Mortgage"). Of this $102,000.00, $86,666.02 was used to pay off the mortgage in favor of the Clover Trust. Attorney Elizabeth Grimes ("Grimes") acted as the settlement agent for this mortgage.

In 2007, Mrs. Wright's daughter, Mrs. Kozlowski, and her husband, Mr. Kozlowski, were interested in opening a restaurant and needed funding to purchase the real estate where the restaurant would be located and for renovations, equipment, and furniture. On October 24, 2007, the Kozlowskis executed a commercial promissory note in the amount of $190,000.00 in favor of Marjem Mortgage (the "Note") in order to obtain the money needed to open a restaurant business located at 118 Elm Street, Millbury, Massachusetts (the "Restaurant Property"). The Kozlowskis had prior restaurant experience, having operated a Worcester restaurant called Riley's. The Note

---

[1] All claims against Defendant Ocwen Loan Servicing, LLC have been dismissed with prejudice.

2

was secured by a mortgage on the Restaurant Property in the amount of $190,000.00. The Note was also secured by a guaranty by Mrs. Wright in favor of Marjem Mortgage (the "Guaranty"). The Guaranty was secured by a mortgage against the Property in the amount of $190,000.00 (the "Second Mortgage"). The terms of the Note provided that the rate of interest due on the note was in the amount of 13% per annum and the maturity date was October 24, 2008.

Attorney Scott Jamieson ("Jamieson") represented Marjem Mortgage at the closing for the Second Mortgage. Though Grimes does not recall this closing, the evidence indicates she represented the Kozlowskis in this transaction. During the closing, Mrs. Wright, who was unrepresented, sat next to Jamieson at one end of a long table, while Mr. and Mrs. Kozlowski sat at the other end. Jamieson asked Mrs. Wright three times if she understood what she was signing. Both Mr. and Mrs. Kozlowski testified that they heard Jamieson ask Mrs. Wright if she understood three times, but neither could hear Mrs. Wright answer. Jamieson witnessed Mrs. Wright's signature for the Second Mortgage and the Guaranty and notarized her signature for the Second Mortgage. Jamieson testified that his duties as a notary include verifying that the person signing the document is who they claim to be and that they understand the document they are signing. There was no evidence introduced at trial that Mrs. Wright indicated at any time during the closing that she did not understand what she was doing.

Mrs. Wright had told Mrs. Kozlowski that she wanted to help her and her husband open the restaurant, and that she thought the restaurant was a good idea. Mr. Kozlowski testified that he understood that Mrs. Wright wanted to help him and his wife out, but that she did not realize "how far she was getting into anything," and that it could have been a car loan. Mrs. and Mr. Kozlowski both testified that they did not read the documents they signed when executing the Note.

At the time she executed the Second Mortgage, Mrs. Wright's monthly income came from a pension of approximately $900.00 and social security benefits of approximately $1,200.00. She was about 80 years old. She lived on her own at her home in Shrewsbury, Massachusetts, spoke to Mrs. Kozlowski several times a day and saw Mrs. Kozlowski several times a week. Mrs. Kozlowski often drove Mrs. Wright to her medical appointments. Mrs. Wright's son, Richard Wright, was living in New Jersey at the time Mrs. Wright executed the Second Mortgage.

Mrs. Wright's medical records from December 21, 2006 through May 9, 2011 show she was treated by Dr. Bergman. During this time she was not prescribed any medication by Dr. Bergman or the Reliant Medical Group for mental dysfunction. On March 9, 2007, Mrs. Wright was observed as "well and in no acute distress." On April 17, 2007 there is a notation that Mrs. Wright was aware that she did not show up for lab tests. Some memory loss was noted on June 17, 2009, and was attributed to lack of sleep due to knee pain and a possible B12 deficiency or hypothyroid. On July 19, 2009, an orthopedist noted that Mrs. Wright had a "clear understanding of directions."

Suellen Milley ("Milley"), a former employee of the Shrewsbury Federal Credit Union, knew Mrs. Wright for over twenty years as a customer of the Credit Union. Milley testified that Mrs. Wright began to show signs of forgetfulness over the years, particularly during the three or four years before she moved to New Jersey. Milley further testified that Mrs. Wright remembered signing things, but not what they were for, and towards the end of this time period did not remember signing documents at all.

In February or March of 2011 Mrs. Wright moved to New Jersey to live with Richard Wright. On March 29, 2011, Mrs. Wright executed the Last Will of Virginia Wright, leaving

everything to her son, Richard, because she had already "provided for her [daughter, Maryann Kozlowski] during [her] lifetime." The attorney who drafted this will, Sharon L. Bennett, swore that Mrs. Wright was of sound mind and under no constraint when she signed the will. On March 29, 2011, Mrs. Wright executed a Durable Health Care Power of Attorney and Living Will of Virginia Wright under which she swore that she was of sound mind. On April 18, 2011, Mrs. Wright was diagnosed with dementia.

The Kozlowskis defaulted on the Note. In March 2008, Marjem Mortgage notified the Kozlowskis of its intent to foreclose on their mortgage. In November 2008, Marjem Mortgage attempted to help the Kozlowskis meet their payment obligations on the Note through a forbearance and extension agreement (the "Forbearance Agreement") which lowered the interest rate and monthly payments on the Note and extended the maturity date to October 15, 2009. Marjem did not send Mrs. Wright any correspondence regarding this proposed agreement. Mr. and Mrs. Kozlowski and Mrs. Wright signed the Forbearance Agreement on January 8, 2009. Alan Shocket, an attorney for Marjem Mortgage who drafted the Forbearance Agreement, testified that he believed entering into the Forbearance Agreement was in the best interest of all parties involved. He further testified that he did not obtain any additional information about the Kozlowskis income at the time he drafted the Forbearance Agreement.

The Kozlowskis were unable to make the payments under the Forbearance Agreement and Marjem Mortgage looked to Mrs. Wright's Guaranty for repayment of the Note. Mrs. Wright did not make any payment to Marjem Mortgage in satisfaction of her Guaranty, despite multiple demands. In August 2010, Marjem Mortgage notified Mrs. Kozlowski and Mrs. Wright of its intent to foreclose on the Second Mortgage.

Mrs. Wright served Marjem Mortgage with a Chapter 93A demand letter dated May 20, 2011, asking that Marjem discharge the Second Mortgage and release her from any of her obligations because she lacked the mental capacity to execute the Guaranty or Second Mortgage and further because Marjem Mortgage obtained the Guaranty and Second Mortgage knowing she was financially incapable of paying the Second Mortgage in the event of default. Marjem Mortgage denied any liability and tendered no offer of settlement.

On August 25, 2011, Mrs. Wright filed suit against Marjem Mortgage and others claiming that she was incapacitated when she signed her Guaranty and Second Mortgage. On August 27, 2012, Marjem Recovery served notice of its intent to foreclose on the Property by conducting a public auction on September 24, 2012 at 11:00am. On September 18, 2012, Mrs. Wright filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction Against Marjem Mortgage (the "PI Motion"). On September 26, 2011, an assignment of the Second Mortgage from Marjem Mortgage to Marjem Recovery was recorded with the Worcester Registry of Deeds. On October 9, 2012, a Massachusetts Superior Court Judge allowed the PI Motion and restrained Marjem from proceeding with the foreclosure sale through December 7, 2012 at 5:00 pm. As a result, the September 24, 2012 foreclosure auction was postponed by the auctioneer by public proclamation at the Property to December 19, 2012. The injunction expired on December 7, 2012, and a foreclosure sale was conducted on December 19, 2012.

The Property has been rented to third party tenants who, through the date of the trial, resided there and were paying Mrs. Wright $1,000.00 per month in rent. Marjem Recovery filed a Summary Process Complaint seeking to evict the tenants renting the Property and obtain possession of the Property.

Mrs. Wright served Marjem Recovery with a Chapter 93A demand letter dated August 19, 2013. Marjem Recovery denied any liability and tendered no offer of settlement. Mrs. Wright also filed a complaint against Marjem Recovery on August 19, 2013. On September 16, 2013, by agreement of the parties, the Marjem Mortgage Suit was removed to this Court and consolidated with the Marjem Recovery Suit.

## Discussion

*Breach of Implied Covenant and Fair Dealing*

Mrs. Wright contends the Marjem Defendants breached the covenant of good faith in fair dealing that is implied in every contract in Massachusetts. "The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471 (1991) (quoting *Drucker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976)). The covenant is not breach "so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp*., 441 Mass. 376, 385 (2004). The covenant does not create any rights or duties not otherwise provided for; its purpose is only "to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Id*.

Here there are no facts indicating either of the Marjem Defendants did anything to destroy Mrs. Wright's rights under the Note, the Guaranty, or the Second Mortgage, nor does Mrs. Wright point to any such facts. As such, this Court finds in favor of the Marjem Defendants on this claim.

*Breach of Mortgagee's Duty of Good Faith*

In Massachusetts, "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." *Seppala & Aho Const. Co., Inc. v. Petersen*, 373 Mass. 316, 320 (1977) (quoting *West-Roxbury Co-op. Bank v. Bowser*, 324 Mass. 489, 492 (1949)). The duty of good faith "requires effort and attention by the mortgagee to conduct the sale of the property fairly and in good faith through the observance of the procedural requirements of the statutes and the mortgage." *Id*. at 326. The duty is generally satisfied if the statutes governing foreclosure sales have been adhered to, "unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." *Pemstein v. Stimpson*, 36 Mass. App. Ct. 283, 286 (1994).

Mrs. Wright has not shown that the Marjem Defendants failed to comply with the statutory requirements for foreclosure sales. Marjem sent a notice of the initial sale, and Marjem published the necessary notices in the newspaper. While the cover letter attached to the notice sent to Mrs. Wright did incorrectly name the mortgagee, the legally operative documents included with this letter and published pursuant to M.G.L. c. 244 § 14 contain the correct information. Notice of the postponement of this sale to December 18 was properly done by public proclamation, which is all that is required, particularly when the mortgagor causes the postponement, as here. *Fitzgerald v. First Nat. Bank of Boston*, 46 Mass. App. Ct. 98, 101 (1999) (finding "public proclamation at the time and place of the scheduled auction, where that auction was properly noticed and advertised in the first instance under G.L. c. 244, §§ 11-17B, and where the postponement was made to accommodate the mortgagors" was sufficient). Therefore the Marjem Defendants did not violate the duty of good faith by failing to comply with statutory requirements.

Mrs. Wright also argued that conducting a foreclosure sale while a lawsuit regarding the Property violated the mortgagee's duty of good faith. This Court disagrees. Marjem complied with the preliminary injunction preventing them from foreclosing and, when the injunction ended and Mrs. Wright did not seek a new injunction, went forward with the sale. As in *Figueroa v. Fed. Nat. Mortgage Ass'n*, where the Court found "the duty of good faith and reasonable diligence does not require a mortgagee to refrain from foreclosure while a mortgagor's application for a loan modification is pending," the duty similarly does not require a mortgagee to refrain from foreclosure while a suit may be pending. 2013 WL 2244348, *4 (D. Mass. May 20, 2013) (explaining that requiring a mortgagee to refrain from foreclosing while a loan modification was pending would "place an untenable strain on the foreclosure process" and allow any mortgagor to halt the process just by applying for a modification). Mrs. Wright has not proffered any additional evidence of an absence of reasonable diligence or bad faith apart from any alleged violations of the statutory requirements, and has therefore failed to make a case that the Marjem Defendants breached the mortgagee's duty of good faith.

*Unconscionability*

The principle of unconscionability is addressed in the Uniform Commercial Code, and the Supreme Judicial Court has applied the principles of unconscionability articulated there to situations outside the ambit of the code. *United Companies Lending Corp. v. Sargeant*, 20 F.Supp.2d 192, 206 (D. Mass. 1998). The Code states that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. M.G.L. c. 106, § 2–302. Unconscionability is determined on a

case by case basis, with courts looking at "whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Zapatha v. Dairy Mart, Inc*., 381 Mass. 284, 292-93 (1980) (internal citations omitted). Massachusetts recognizes both procedural and substantive unconscionability; procedural unconscionability looks to whether the circumstances under which the contact was executed to determine whether the contract was the product of unfair surprise while substantive unconscionability looks to whether the terms of the contract were unfair. *United Companies Lending Corp*., 20 F.Supp.2d at 206. Terms of a contract may be considered unfair if they "unquestionably favorable to one party." *Ossers v. Litton Loan Servicing*, 2012 WL 4928874, *9 (Mass. Super. 2012).

  Mrs. Wright failed to provide sufficient evidence at trial that any terms of the Second Mortgage or Guaranty were unconscionable as a matter of law. The Kozlowskis, who had experience operating a restaurant, wanted a loan to open a restaurant, an admittedly risky venture. Mrs. Wright did not proffer any evidence regarding the information the Kozlowskis provided, or failed to provide, Marjem Mortgage when attempting to obtain a loan. Mrs. Wright wanted to help her daughter and son-in-law secure the necessary financing. Procedurally, there is no evidence of unfair surprise. The Kozlowskis were represented by an attorney and at least had the opportunity to read the documents, though they testified that they did not take advantage of that opportunity. Nothing suggests the terms were any different than those the parties discussed prior to executing the documents. The evidence shows that Mrs. Wright expressed a desire to help her daughter and son-in-law open the restaurant, was also given the opportunity to look at the documents, and said at the time she understood what she was signing. There is no evidence the Marjem Defendants conduct in any way led to unfair surprise in execution of either the

Second Mortgage or Guarantee. Similarly, Mrs. Wright produced no evidence at trial showing that the terms contained in either document were out of the ordinary for a commercial loan of this nature. Moreover, all parties received a benefit. The Kozlowskis and Mrs. Wright received the desired funding that allowed the Kozlowskis to purchase real estate and open their restaurant. While in retrospect entering into this loan, and executing the Second Mortgage and Guaranty do not seem wise, this does not mean the terms rise to the level of unconscionability. Neither the procedural circumstances nor substantive terms of the Second Mortgage and Guaranty can be considered unconscionable as a matter of law.

To the extent Mrs. Wright's unconscionability claim is based on the Forbearance Agreement, there is similarly no evidence of conduct so unfair that it could be deemed unconscionable. While the letter regarding the Forbearance Agreement may not have been addressed by Mrs. Wright, it is clear that she did receive the document and signed it, and she produced no other evidence of unfair conduct regarding the execution. Moreover, the terms of the Forbearance Agreement provide a clear benefit to both the Kozlowskis and Mrs. Wright; the Marjem Defendants agreed not to exercise their right to foreclose while giving the Kozlowskis more time to pay off their loan and a reduced interest rate.

On the claim of unconscionability, this Court finds in favor of the Marjem Defendants.

*Rescission*

"Rescission is an equitable remedy that is available when a contract has been entered into through fraud, accident, mistake or some type of grossly inequitable conduct" and seeks to return the parties to the precontractual status quo. *In re Formatech, Inc*., 496 B.R. 26, 36 (Bankr. D. Mass. 2013) (internal quotation omitted).  Mrs. Wright claims to be entitled to rescission based on unconscionability, a breach of the duty of good faith and fair dealing, and because she was

11

not competent to enter into the Second Mortgage or Guaranty. This Court has already rejected the first two arguments, and will therefore only address the third here.

"The inquiry as to the capacity to contract focuses on a party's understanding or conduct only at the time of the disputed transaction." *Sparrow v. Demonico*, 461 Mass. 322, 331(2012). A contract may be voidable due to incapacity where either a party is "incapable of understanding and deciding upon the terms of the contract" or where, "by reason of mental illness or defect, the person is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition." *Id*. at 328-29. It is a question of fact whether a person is competent to enter into a transaction, and the burden of showing an incapacity to contract is on the party seeking to void the contract. *Id*. at 327-28. Moreover, the Supreme Judicial Court has held that "medical evidence is necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition." *Id*. at 331-32.

Mrs. Wright has not met her burden of proving she was not competent to enter into a contract the day she signed the Second Mortgage and Guaranty in October 2007. Her medical records show no mention of memory loss until two years later in June 2009, and this was attributed to lack of sleep and a possible B12 deficiency. There is no evidence Mrs. Wright was treated for any sort of mental defect prior to her diagnosis of dementia in April 2011. On the day she signed the Second Mortgage and Guaranty she indicated she understood what she was signing, even after being asked three times, and no one present noted any behavior on her part that indicated otherwise. There is simply not enough evidence, medical or otherwise, to show Mrs. Wright lacked the capacity to enter into a contract in October 2007. Therefore there is no basis for rescission of the Second Mortgage and Guaranty, and this Court finds in favor of the Marjem Defendants on those claims.

*Violation of M.G.L. c. 93A*

Mrs. Wright claims the Marjem Defendants violated M.G.L. c. 93A by acting in bad faith in the foreclosure process and by executing a predatory loan. M.G.L. c. 93A makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A § 2(a). When determining whether conduct constitutes an unfair act or practice, Massachusetts courts look at see "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). Although where the foreclosure of a mortgage is conducted in bad faith a c. 93A claim may lie, this Court has already determined, as discussed above, that Mrs. Wright failed to prove that the Marjem Defendants acted in violation of the mortgagee's duty of good faith in the foreclosure process. Therefore this Court will address here only Mrs. Wrights' claim that the loan was predatory.

In *Com. v. Fremont Inv. & Loan*, the Supreme Judicial Court explained that even if a loan did not violate M.G.L. c. 183C as a "high-cost home mortgage loan," it still could be considered "unfair" under c. 93A "for a lender to make a home mortgage loan secured by the borrower's principal residence in circumstances where the lender does not reasonably believe that the borrower will be able to make the scheduled payments and avoid foreclosure." 452 Mass. 733, 749 (2008). In this case, Marjem Mortgage did not make a home mortgage loan, but a commercial loan, so it is not clear the reasoning in *Fremont* would apply in this case. Even if it did, however, Mrs. Wright failed to prove Marjem Mortgage made the loan without a reasonable belief that it could be paid back. As this Court has noted, while the loan seems unwise in

13

retrospect, Mrs. Wright did not introduce evidence that the terms of such a commercial loan, made in 2007, were either unusual or unreasonable. Nor did she introduce sufficient evidence of the documentation the Kozlowskis provided to Marjem Mortgage when attempting to secure this loan. In *Fremont*, the Commonwealth supplied evidence showing the mortgagee determined loan qualification based on a borrowers debt-income ratio for the introductory rate payments rather than the full rate that would be applied after two or three years, thereby allowing borrowers to qualify for loans they would be unlikely to be able to repay. 452 Mass. at 737. Here there is no such evidence of conduct on the part of the Marjem Defendants. Mrs. Wright did not show that Marjem Mortgage had information in its possession at the time which would cause a reasonable lender to believe the Note could not be paid back. As a result, this Court cannot find Marjem Mortgage made a predatory loan that would violate c. 93A, and must find in favor of the Marjem Defendants on this claim.

*Declaratory Judgment*

Mrs. Wright seeks declaratory judgment that the Second Mortgage is void and that neither Marjem Defendants possess legal title to the Property as a result of the foreclosure sale that took place on December 19, 2012. As this Court has rejected all of Mrs. Wright's claims which would void the Second Mortgage and the foreclosure sale, there is no basis for the declaratory judgment Mrs. Wright requests.

*Indemnification*

Mrs. Wright has also brought a claim for indemnification against Mr. and Mrs. Kozlowski. It has been recognized that even in the absence of an express agreement, a principal obligor is impliedly bound to indemnify a guarantor and make her whole. 23 Williston on Contracts § 61:59 (4th ed.); Restatement (Third) of Suretyship & Guaranty § 22 (1996).

However, this obligation to indemnify does mature until the guarantor "performs the secondary obligation" or "makes a settlement with the obligee that discharges the principal obligor, in whole or part, with respect to the underlying obligation." Restatement (Third) of Suretyship & Guaranty § 22 (1996). Here, Mrs. Wright has yet to perform her obligation such that the right to indemnification would have matured. Therefore while this Court finds that Mrs. Wright, as guarantor, has an implied right to indemnification from the Kozlowskis, it also finds this claim has been brought prematurely, as she has not yet performed her obligation in satisfaction of the Guaranty. As such, the indemnification claim is dismissed without prejudice.

## Conclusion

For the reasons set forth above, the Court finds in favor of the Marjem Defendants on all claims against them, and dismisses without prejudice the respective claims for indemnification against the Kozlowskis.

SO ORDERED.

                                        **/s/ Timothy S. Hillman**
                                        **TIMOTHY S. HILLMAN**
                                        **UNITED STATES DISTRICT JUDGE**